ARNOLD, Respondent, v. RAILWAY STEEL SPRING
COMPANY, Appellant.

St Louis Court of Appeals, May 12, 1908.

CONTRACTS: Prima-Facie Case. In an action for a sum agreed to
be paid the plaintiff by the defendant, in consideration of the
defendant's waiving his right under a contract of employment
for a year, the evidence is examined and held sufficient to
make out a prima-facie case, showing that plaintiff had a con-
tract for a year and waived his rights under it, as sufficient
consideration for the agreement sued on.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse
A. McDonald,* Judge.

AFFIRMED AND REMANDED.

*John S. Leahy* for appellant.

Entire absence of evidence to prove material alle-
gations of petition makes it the duty of the trial court
to give instruction in the nature of a demurrer. Charles
v. Patch, 87 Mo. 450; Hyde v. Railway, 110 Mo. 272;
Higgins v. Railway, 43 Mo. App. 547. The mere sug-
gestion of an intention to give evidence to sustain ma-
terial parts of petition is not sufficient. Noeninger v.
Vogt, 88 Mo. 589; Dawling v. Allen, 6 Mo. App. 195.

*Carter, Collins & Jones* for respondent.

GOODE, J.—This appeal was prosecuted from an
order of the court setting aside an involuntary nonsuit.
The action is for four months' salary alleged to be due
plaintiff for the last third of the year 1906; that is, for
the months from September to December, inclusive.
The petition alleges that on and prior to September,
1906, plaintiff was in the employ of defendant under a
contract for the year from March 15, 1906, as sales
agent in St. Louis and territory tributary thereto and

as manager of the business office of the defendant in said city; that plaintiff's salary was $6,000 per annum, payable in equal monthly installments; that on August 2, 1906, at the request of defendant, the parties entered into an agreement by which, in consideration of plaintiff's waiving his rights under said yearly contract of employment and relinquishing his employment without notice, defendant undertook and agreed to pay him the sum of $2,500 in installments of $500 each, payable at the end of each month from August first to December 31, 1906; that pursuant to said agreement plaintiff waived and relinquished all his rights under the yearly contract of employment and defendant thereafter paid him the first installment, to-wit, $500, on August 31, 1906, but refused to pay the subsequent installments; wherefore plaintiff prayed judgment for $2,500. The answer admitted it employed plaintiff in March, 1906, as sales agent, specifically denied the employment was a yearly one, and averred it was an employment from month to month at a salary of $500 a month. For further answer defendant stated that in March, 1906, it terminated plaintiff's employment and afterwards plaintiff represented he was in financial difficulty, would be unable to procure employment for some months and requested defendant to assist him; whereupon defendant agreed to pay him $500 a month up to and including December 31, 1906, provided plaintiff did not enter the service of a competitor of defendant or any person or corporation engaged in any business similar to defendant's; that defendant paid plaintiff on August 31, 1906, $500, but shortly afterwards ascertained plaintiff was in the employ of its principal competitor and was doing all he could to take away business from it; whereupon defendant notified him he would receive no further remuneration. The answer further averred defendant was ignorant of the fact that plaintiff was representing a rival business concern when

it paid the first installment of salary on August 31, 1906, and under the terms of the agreement between plaintiff and defendant, the former was not entitled to said installment and judgment was prayed for it by way of counterclaim. In reply plaintiff admitted defendant agreed to pay him $500 a month up to and including December, 1906, but denied the consideration for said agreement was, as alleged in *plaintiff's petition* (sic, but clearly meaning defendant's answer) and averred the same was an absolute and unconditioned promise to pay; denied also every other allegation contained in the answer. It will be seen from the foregoing statement of the pleadings that practically only two issues were raised; whether plaintiff's employment was by the year, and whether the agreement by defendant to pay him a salary during the remainder of the year 1906, after his discharge in August, was based on a promise by plaintiff not to accept employment from any business competitor of defendant. That plaintiff was employed by defendant at a salary which would amount to $6,000 a year, was discharged August, 1906, and defendant agreed to pay his salary for the remainder of the year, are facts admitted by the pleadings. The only witness who testified was plaintiff himself; but in connection with his testimony a letter he had written to one of the officers of the defendant company in New York, was put in evidence. Just what business defendant company is engaged in is nowhere clearly stated, but we surmise it is the sale of springs, flanges, tires and similar steel products. Plaintiff testified that prior to March 15, 1905, he represented the Latrobe Steel Company as sales agent in New York. About March 12, 1905, he received a telephone communication from one of the officers of the defendant company to come to their office. He went there and was introduced to Mr. Fitzpatrick, one of the officials of the defendant company, by the vice-president of the company, Mr. Silverthorn,

and also met others of the officials. He was informed
the previous agent and representative of the company
in St. Louis would be removed to New York and the
officers desired plaintiff to take his place in St. Louis.
A talk about salary ensued, plaintiff insisting he ought
to receive $7,500 a year to give up the position he held
and move to St. Louis. The officers of the company
said they thought $6,000 a year would be about right,
and after negotiating for several days, a contract was
made, fixing the salary at the sum last stated. Plaintiff
came to St. Louis and represented the company through
the first year and until August 2, 1906, of the second
year; that is to say, his first year's employment expired
on March 16, 1906, but he was continued in service
without any discussion. In August, 1906, Fitzpatrick,
one of the officers of the company, appeared in St.
Louis and notified plaintiff his services would no longer
be required, but he would be replaced by another repre-
sentative. Fitzpatrick said the company would pay
plaintiff's salary to January, 1907. It should be stated
plaintiff did not move his family to St. Louis until the
end of the first year. Plaintiff was surprised and per-
turbed by his discharge, of which he could elicit no ex-
planation. He insisted his salary ought to be paid to
the end of the second year; that is, until March 15,
1907, and on the suggestion of Fitzpatrick, wrote Silver-
thorn, the vice-president, a letter to that effect, saying
he appreciated the promise of the company to pay his
salary to the first of January, but felt, under the cir-
cumstances, he should be retained until the end of the
second year. This matter was again taken up shortly
afterwards when plaintiff was in New York City, but
the officers of the company adhered to their resolution
not to pay him beyond January. He was paid $500
August 31st, and not long afterwards, while at lun-
cheon in the Mercantile Club, met Fitzpatrick, who
taxed him with representing a business competitor

and said no more salary would be paid him. Plaintiff testified positively there was no agreement he should not engage his services to a business competitor of the defendant as the condition on which his salary was to be paid for the remainder of the year, 1906; but that the agreement to continue his salary accompanied the notice of discharge, and he was then told to leave his address with Fitzpatrick, and his salary would be sent him to January 1, 1907. At the conclusion of plaintiff's testimony, the court directed the jury to return a verdict for defendant; whereupon plaintiff's counsel took a nonsuit with leave to move to set aside, which motion was subsequently made and sustained.

It is contended for defendant the evidence introduced has no tendency to prove a contract for yearly employment from March 15, 1906, as alleged in the petition, and hence a promise by the company to pay plaintiff for the last five months of that year was made without consideration. It is argued that plaintiff nowhere testified defendant agreed to give him $6,000 a year for his services, but merely that the officers of the company said $6,000 was as much as they wanted to pay and plaintiff accepted the proposition. It is further argued that this testimony does not prove a definite contract of employment by the year, but one which could as well be by the day, week or month. One reading the testimony for plaintiff can hardly imagine how it is possible to conclude his testimony has no tendency to prove an employment by the year. It tended to prove that and nothing else and by every kind of inference does prove it. This was all the testimony introduced, and unless it is to be ignored, plaintiff made a prima-facie case by proving an employment by the year and an agreement between defendant and himself when he was discharged, that his salary should go on until the end of the year 1906. As to the contention of defendant that plaintiff agreed not

to represent any business competitor in consideration of receiving salary after he was discharged, we simply say there is no evidence whatever to prove such an agreement, which plaintiff positively denied.

The order for new trial is affirmed and the cause remanded. All concur.